United States District Court

For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARY GARCIA,                                    No. C-07-05469 JCS

        Plaintiff,                              **ORDER GRANTING PLAINTIFF'S
                                                MOTION FOR SUMMARY JUDGMENT
    v.                                         AND DENYING DEFENDANT'S MOTION
                                                FOR SUMMARY JUDGMENT  [Docket
MICHAEL J. ASTRUE, COMMISSIONER                 Nos. 17, 18]**
OF SOCIAL SECURITY,

        Defendant.
_____/

## I.    INTRODUCTION

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act on October 7, 2003.  The application was denied initially and on reconsideration.  A hearing on the application was held on June 2, 2005, with Administrative Law Judge ("ALJ") Thomas J. Gaye presiding.  In a decision issued on August 25, 2005, Gaye concluded that Plaintiff was disabled for the period between January 17, 2003 and June 30, 2005 but that as of July 1, 2005, Plaintiff was no longer disabled due to the success of her corrective back surgery.  This decision became final when the Appeals Council denied Plaintiff's request for review on October 4, 2007.  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).  Plaintiff asks the Court to reverse the Commissioner's decision for the period beginning July 1, 2005, and remand the matter to the Commissioner with instructions to award benefits.  In the alternative, Plaintiff asks that the Court remand for further proceedings.

Plaintiff filed a motion for summary judgment ("Plaintiff's Motion") on February 22, 2008 (Docket No. 17), and the Commissioner filed a motion for summary judgment ("The Commissioner's Motion") on March 24, 2008. (Docket No. 18.)  Plaintiff filed a reply to the

**United States District Court**
For the Northern District of California

1   Commissioner's Motion on April 7, 2008.  The parties have consented to the jurisdiction of a

2   magistrate judge pursuant to 28 U.S.C. § 636(c).  For the reasons stated below, Plaintiff's Motion is

3   GRANTED.  The Commissioner's Motion is DENIED.

4   **II.     BACKGROUND**

5          **A**.     **Plaintiff's Background**

6          Plaintiff was born on September 15, 1943.  Administrative Record ("AR") at 71.  She was 59

7   years old as of January 17, 2003, the alleged onset date of the disability.  Id.   Plaintiff graduated

8   from high school.  AR at 81.  Her past relevant work experience consists of approximately eight

9   years of employment at a delicatessen, between 1986 and 1994, and another eight years as a clerical

10  worker, between 1995 and 2003.  AR at 76.   As a clerical worker, Plaintiff was required to answer

11  telephones, file, lift files and supplies, fax documents and enter data on her computer.  *Id.*

12         **B.     Plaintiff's  Medical History**

13                **1.     Leg, Hip and Back Pain Prior to 2005 Back Surgery**

14         On January 16, 2003, Plaintiff fell in her yard, landing on her right hip, and soon thereafter

15  began to experience severe pain in her back, hip and right leg.  AR at 162, 169, 342.  On January 23,

16  2003, Plaintiff was seen by Dr. Victoria Barbara, who prescribed ice and Vicodin and requested a

17  magnetic resonance image ("MRI") of Plaintiff's lumbar spine.  AR at 162.  On January 27, 2003,

18  Dr. Barbara saw Plaintiff again and reviewed the MRI, which revealed a broadbased disc bulge at

19  L4-5, as well as degenerative end plate changes at T11-12, neural foraminal narrowing at L1-2, disc

20  desiccation at L2-3, and both disc desiccation and a "very small broadbased bulge" at L3-4.  AR at

21  159-161.  Plaintiff was prescribed pain medications and received a series of epidural blocks in

22  subsequent months.  AR at 150 (pain medication), 207 (pain medication), 194 (epidural block on

23  2/26/03), 186 (epidural block on 3/26/03), 176 (epidural block on 8/27/03).

24         On September 8, 2004, Plaintiff was examined by an orthopedic surgeon, Dr. Bobby Tay, at

25  University of California, San Francisco ("UCSF") medical center.  AR at 267.  Dr. Tay reviewed

26  Plaintiff's radiographs, which showed L4-L5 degenerative spondylolisthesis.  *Id.*  He referred

27  Plaintiff for un updated MRI and advised Plaintiff that she should consider surgical decompression

28  and fusion.  AR at 268.  Plaintiff returned to Dr. Tay on September 29, 2004, at which time he

2

United States District Court
For the Northern District of California

1    reviewed the new MRI and discussed the risks and benefits of surgery with Plaintiff.  AR at 265.

2    Based on his review of the MRI, Dr. Tay found that Plaintiff had degenerative disc disease between

3    L2 and L5 and stenosis at L4-5 and L5-S1.  *Id.*  He noted that Plaintiff was taking five to seven

4    Vicodin a day for pain.  *Id.*  Dr. Tay advised Plaintiff that there was an 80% chance that the surgery

5    would improve her leg pain and a 50% chance it would improve her back pain.  *Id.*

6                    **2.    2005 Back Surgery and Follow-Up**

7            Plaintiff elected to proceed with the back surgery recommended by Dr. Tay, which was

8    performed on January 13, 2005.  AR at 247-251. The operation consisted of the following

9    procedures: 1) a laminectomy, L3 to L5, with the superior third of L5 only; 2) right L5-S1

10   laminoforaminotomy; 4) L4-5 screw and rod fixation; 4) L4-5 fusion with local bone; 5) right

11   posterior iliac crest bone graft through a separate fascial incision.  AR at 247.  Six weeks after the

12   surgery, on March 2, 2005, Dr. Tay examined Plaintiff and concluded that she was "doing well."

13   AR at 260.  He found that the incision was "well-healed" and that Plaintiff was "walking

14   significantly longer distances now than before her surgery."  *Id.*  He noted, however, that she "still

15   complains of some anterior thigh pain specifically at night."  *Id.*  Dr. Tay stated that "[o]ur plan is

16   for her to start some mild exercise activities, such as riding a stationary bike."  *Id.*  He prescribed

17   Elavil for Plaintiff's thigh pain.  *Id.*

18           Plaintiff was seen by Dr. Tay for a three-month follow-up on June 2,2005.  AR at 271.  Dr.

19   Tay stated that Plaintiff was "doing extremely well postoperatively"and that she was "very happy

20   with her overall results."  *Id.*  He stated that Plaintiff's incision was well-healed and that her fusion

21   was healing.  *Id.*  He noted that Plaintiff "still ha[d] some mild back spasms, which is improved with

22   baclofen and she takes one to two Vicodin a week."  *Id.*  Dr. Tay predicted that Plaintiff would

23   "slowly taper off" the Vicodin "over time as her fusion heals."  *Id.*

24

25

26

27

28

United States District Court

For the Northern District of California

### 3.     Leg, Hip and Back Pain Following 2005 Surgery

There is no indication from Plaintiff's medical records[1] that Plaintiff received any further epidural injections or surgery to address her back problems after her 2005 surgery.  However, a spine evaluation by Dr. Beverly Thomas on December 8, 2006 states that Plaintiff was experiencing muscle spasms in her lower back and that her back condition had "worsened this year."  AR at 311.  She noted that Plaintiff could sit or stand only thirty minutes at a time and that she was riding a stationary bicycle approximately three miles three to four times a week.  *Id.*  Elsewhere in the report, Dr. Thomas described Plaintiff's back pain as "chronic," noting that Plaintiff had previously had a fusion at L5-S1.  AR at 313.  Dr. Barber stated that Plaintiff was taking two and a half Vicodin tablets a day for pain.  *Id.*

### 4.     Knee Pain

Plaintiff's medical records reflect that she complained to Dr. Barber about "excruciating" pain in her right knee in 2001.  AR at 165.  Dr. Thomas examined Plaintiff and found a full range of motion, negative McMurray test and no instability with vargus/valus stress or significant effusion *Id.*  However, in a follow-up visit on October 12, 2001, Dr. Barber noted that Plaintiff was experiencing increased pain and concluded that "[c]linical evaluation demonstrates findings consistent with effusion."  AR at 164.  Plaintiff was given a cortisone injection and scheduled for a follow-up two weeks later.  *Id.*  Although Dr. Barber stated that an MRI would be performed if Plaintiff did not improve, there is no record indicating that an MRI was conducted at that time.  A notation from Plaintiff's January 23, 2003 examine by Dr. Barber (discussed above) states, "knee exam ok."  AR at 162.

The next medical record relating to Plaintiff's knee pain is dated July 15, 2005.  On that date, Dr. Barber examined Plaintiff's right knee, noting that Plaintiff had told her that her right knee pain had begun to be problematic approximately one month earlier, that is, just after the hearing on

---

[1]Following the hearing but before the ALJ had issued his decision, Plaintiff provided the ALJ with her medical records from UCSF for the period November 17, 2004 to June 2, 2005.  In addition, after the ALJ issued his decision, Plaintiff provided the Commissioner with medical records from Peninsula Orthopedic Associates for the period 12/06/05 to 4/12/07 and from Peninsula Sports Medicine and Rehabilitation Center for the period 12/11/06 to 1/22/07.

United States District Court
For the Northern District of California

1    Plaintiff's application for disability benefits.  AR at 302.  Plaintiff received a cortisone injection

2    during her July 15, 2005 visit, but she reported a month later, in a follow-up visit with Dr. Barber,

3    that the injection had given her only "minimal relief."  AR at 301, 302.  Dr. Barber then prescribed a

4    series of three Synvisc injections, administered weekly starting August 15, 2005.  AR at 299-301.  In

5    November, 2005, Plaintiff told Dr. Barber that those injections were not beneficial and Dr. Barber

6    requested an MRI of Plaintiff's knee.  AR at 299.  Dr. Barber saw Plaintiff again on December 9,

7    2005 and reviewed the MRI.  AR at 298.  Based on the MRI, Dr. Barber made the following

8    findings:

9         MRI of the right knee demonstrates findings consistent with oblique tear through the medial
          horn of the lateral meniscus.  Interstitial tear is also noted at the anterior cruciate ligament.
10        Three-compartmental arthritis was also diagnosed.  Ms. Garcia indicates that her pain is quite
          intense.  Clinical evaluation confirms her assessment.  There is no evidence of instability.
11        However significant pain is noted with motion.

12        Given these findings, it is my opinion that a knee arthroscopy is warranted.  This is justified
          by the positive McMurray testing in conjunction with MRI objective findings.
13

14   AR at 298.

15        The arthroscopy was performed on December 27, 2005.  AR at 306-307.  However, Plaintiff

16   continued to experience "significant right knee pain associated with weightbearing activities."  AR

17   at 294.  In June 2006, Dr. Barber noted that "a review of arthroscopic photos from December 2005

18   demonstrates severe chondral defects involving the femoral condyle" and concluded that "a total

19   knee arthroplasty is reasonable."  *Id.*  An MRI performed in July 2006 "demonstrate[d] complex tear

20   of the lateral meniscus with degenerative changes identified in the medial femoral condyle extending

21   into the weightbearing surface."  AR at 293.  Another arthroscopy was performed on March 13,

22   2007.  AR at 304-305.  However, Plaintiff continued to experience significant pain in her right knee.

23   AR at 290.  As of April 2007, Dr. Thomas projected that a total knee arthroplasy would be required

24   in the future.  *Id.*

25             **5.       Obesity**

26        As of January 2004, Plaintiff was 5'2" and weighed 212 pounds.  AR at 216.  At the hearing,

27   she testified that she weighed 210 pounds.  Dr. Tay  found Plaintiff to be "moderately obese."  AR at

28   267. Similarly, Dr. Barber described Plaintiff as "mild-mod. obese."  AR at 312.

5

United States District Court
For the Northern District of California

### C.     The Administrative Hearing

The ALJ held an administrative hearing on Plaintiff's claims for disability insurance benefits on June 2, 2005 in San Francisco. AR at 336. Both Plaintiff and a vocational expert ("VE") appeared and testified at the hearing. AR 336 -348. Attorney Tom Weathered represented Plaintiff at the hearing. AR at 336.

The ALJ began the hearing by asking Plaintiff about her back surgery. AR at 341. When asked if the surgery helped, Plaintiff answered, "[v]ery much so." AR at 342. Plaintiff agreed with the ALJ that the back surgery made her back "a lot better" but testified that after the surgery she couldn't do everything she used to do. AR at 344. She testified that she could not pick things up off the floor without pain, that she could not pick up her grandchildren, and that she could not go shopping much because she couldn't stand on her feet too long. *Id.* She further testified that she could not stand more than thirty minutes without needing to sit down and that she could only sit for twenty minutes at a time before needing to change positions. AR at 345. She stated that if she sat for more than twenty minutes at a time she experienced "bad muscle spasms" in her back and needed to get up and walk around. *Id.* Plaintiff testified that when her back pain became severe, she needed to take Baclofen, or, when the pain was particularly bad, Vicodin, and sit or lay down. AR at 346. She testified that she took two tablets of Vicodin once or twice a day. *Id.* Finally, Plaintiff testified that she does not go grocery shopping on her own but only goes with her husband because she can't pick things up. *Id.*

Next, the ALJ questioned the VE. He asked the VE whether "a person of claimant's age, education and past work experience at the light exertional level" could go back to Plaintiff's past work. AR at 347. The VE responded that with respect to both Plaintiff's work at the delicatessen and her position as a clerical worker, such a person could perform Plaintiff's past work. AR at 347-348. The ALJ then asked the VE "if a claimant could not walk more than thirty minutes at a time, could not reach down to pick up anything off the floor, could not sit more than twenty minutes without having to get up and walk around because of problems. would she be able to then do the clerical job?" AR at 348. The VE responded that she would not because the need to get up and walk around every twenty minutes would interrupt her work. *Id.*

6

United States District Court

For the Northern District of California

**D.    The ALJ's Five-Step Analysis and Findings of Fact**

Disability insurance benefits are available under the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 423(a)(1).  A claimant is only found to be disabled if his physical or mental impairments are of such severity that he is not only unable to do his previous work, but also "cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 4239(d)(2)(A).  The claimant bears the burden of proof in establishing a disability.  *Gomez v. Chater*, 74 F.3d 967, 970 (9th Cir.), *cert. denied*, 519 U.S. 881 (1996).

The Commissioner has established a sequential five-part evaluation process to determine whether a claimant is disabled under the Social Security Act.  20 C.F.R. § 404.1520(a).  At Step One, the Commissioner considers whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 1520(a)(4)(I).  If he is, the Commissioner finds that the claimant is not disabled, and the evaluation ends.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two.

At Step Two, the Commissioner considers whether the claimant has "a severe medically determinable physical or mental impairment," or combination of such impairments, which meets the duration requirement in 20 C.F.R. § 404.1509.  An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." C.F.R. § 404.1520(c).  In addition, the physical or mental impairment (or combination of impairments) must have lasted, or must be expected to last, for a continuous period of 12 months.  20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509.  If the claimant does not have a severe impairment for the required duration, the Commissioner finds the claimant not disabled and the evaluation ends at this step.  C.F.R. § 404.1520(c).  Age, education, and work experience are not considered at this step.  *Id.*

At Step Three, the Commissioner considers whether the claimant's impairment, or impairments, "meets or equals" one of the Social Security Administration's compiled listings of

7

United States District Court

For the Northern District of California

1   impairments that the Commissioner has established as disabling. 20 C.F.R. § 404.1520(a)(4)(iii). If

2   the claimant's impairment meets one of these listed impairments, the Commissioner will find the

3   claimant disabled. If the impairment does not meet one of the listed impairments, the process

4   continues to Step Four.

5        At Step Four, the Commissioner considers whether the claimant, in light of his RFC, can

6   continue to perform work he has performed in the past. 20 C.F.R. § 404.1520(a)(4)(iv). Based on

7   the relevant medical evidence and other evidence in the record, the Commissioner will assess the

8   claimant's RFC to determine whether the claimant can do his past work. 20 C.F.R. § 404.125(e). If

9   the RFC assessment determines that the claimant can perform his past work, the Commissioner will

10  find him not disabled. 20 C.F.R. § 404.1520(f). If the RFC assessment determines that the claimant

11  cannot perform his past work, then the claimant proceeds to Step Five of the evaluation.

12       At Step Five, the Commissioner considers the claimant's RFC, age, education, and work

13  experience to determine whether the claimant can "make an adjustment to other work." 20 C.F.R.

14  § 404.1520(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner

15  will find him disabled. *Id.* At Step Five, the burden shifts to the Commissioner to show that the

16  claimant, in light of his impairments, age, education, and work experience, can adjust to other work

17  in the national economy, and that such a job actually exists. *Distasio v. Shalala*, 47 F.3d 348, 349

18  (9th Cir. 1995).

19       Finally, a prior administrative finding of non-disability gives rise to a presumption of

20  continuing non-disability that can only be overcome if the claimant proves "changed circumstances"

21  indicating a more severe condition. *Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988).

22       In this case, the ALJ found that at Step One of the evaluation process that the Plaintiff had

23  not engaged in any substantially gainful activity from January 17, 2003 through and until June 30,

24  2005. AR at 43.

25       At Step Two, the ALJ found that during this closed period, the medical evidence establishes

26  that the "claimant had severe lumbar disc degeneration at multiple levels for which she underwent

27  surgery." *Id.*

28

8

1    At Step Three, the ALJ found that Plaintiff did not have an "impairment or combination of

2  impairments listed in or medically equal to one listed . . ." *Id.*

3    At Step Four, the ALJ found that while the "claimant was restricted to a limited range of

4  sedentary work during the closed period" she has been "capable of light work since July 1, 2005."

5  *Id.* He concluded that Plaintiff's testimony was "generally credible but not to the extent she alleged

6  disability since the end of the closed period." *Id.*

7    Finally, at Step Five the ALJ found that Plaintiff's age, education and work experience,

8  along with her exertional capacity for a limited range of sedentary work directed a finding of

9  disabled during the closed period. *Id.* On the other hand, he concluded, based on the VE's

10  testimony, that Plaintiff was not disabled as of July 1, 2005, because from that point on she could

11  perform her past work.   He also found that given her "additional nonexertional limitations" and the

12  testimony of the VE that she could not "be expected to make a vocational adjustment to work that

13  exists in significant numbers in the economy." AR at 43-44.  The ALJ relied on the testimony of the

14  vocational expert who stated that the Plaintiff could perform "her past work as a clerical worker and

15  bookkeeper." AR at 41.

16    Ultimately, based on these factors, the ALJ concluded that the claimant was "under a

17  disability, as defined by the Social Security Act, from January 17, 2003 through and including June

18  30, 2005." AR at 44.  He also concluded that "since July 1, 2005, the claimant has not been

19  disabled." *Id.*

20              **E.    Contentions of Parties**

21    Plaintiff argues that the ALJ's finding that Plaintiff was not disabled as of July 2005 is not

22  supported by substantial evidence.  She further asserts that the ALJ's decision was based on three

23  errors of law.  First, Plaintiff argues that the ALJ did not apply the correct legal standard relating to

24  medical improvement, which places the burden on the Commissioner to point to medical evidence

25  showing that the claimant's residual functional capacity has increased.  Second, Plaintiff argues that

26  the ALJ failed to consider the combined effect of Plaintiff's severe impairments because he did not

27  address the implications of her obesity, in combination with her hip and knee problems, as these

28

United States District Court
For the Northern District of California

9

United States District Court

For the Northern District of California

1    impairments related to her ability to work.  Finally, Plaintiff argues that the ALJ did not provide

2    legally sufficient reasons for finding that Plaintiff's testimony regarding her limitations after July

3    2005 were not fully credible.

4            The Commissioner argues that the decision of the ALJ was supported by substantial evidence

5    and that the ALJ applied proper legal standards.

6    **III.    ANALYSIS**

7            **A.    Legal Standard**

8            When reviewing the Commissioner's decision, the Court takes as conclusive any findings of

9    the Commissioner which are free from legal error and "supported by substantial evidence."  42

10   U.S.C. § 405(g).  Substantial evidence is "such evidence as a reasonable mind accepts as adequate to

11   support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence

12   means "more than a mere scintilla" but "less that a preponderance."  *Id.  Desrosiers v. Sec'y of*

13   *Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  Even if the Commissioner's findings

14   are supported by substantial evidence, they should be set aside if proper legal standards were not

15   applied when using the evidence to reach a decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.

16   1978).  In reviewing the record, the Court must consider both the evidence that supports and detracts

17   from the Commissioner's conclusion.  *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

18           **B.    Plaintiff's Medical Improvement Following Back Surgery**

19           Plaintiff argues that the ALJ did not meet his burden as to the period beginning July 1, 2005

20   by demonstrating that due to medical improvement, Plaintiff's RFC was greater than it had been

21   before her back surgery and therefore, she could perform her past work once again.  The Court

22   agrees.

23           As a preliminary matter the Court must address the standard applicable to the question of

24   medical improvement in cases involving closed periods of disability.   In cases involving the

25   termination of disability benefits, the Commissioner must determine "if there has been any medical

26   improvement in [a claimant's] impairment(s) and, if so, whether this medical improvement is related

27   to [the claimant's] ability to work."  20 C.F.R. § 404.1594(a).  Although the Ninth Circuit has not

28

10

1    yet addressed whether this standard also applies to cases involving closed periods of disability, the

2    Circuits that have are largely in agreement that it does.  *See Waters v. Barnhart*, 276 F.3d 716, 718-

3    19 (5th Cir. 2002) (holding that "in closed period cases, the ALJ engages in the same decision-

4    making process as in termination case" and therefore, that the medical improvement standard applies

5    to the cessation date in closed period cases); *Sheperd v. Apfel*, 184 F.3d 1196, 1200-01 (10th Cir.

6    1999); *Jones v. Shalala*, 10 F.3d 522, 524 (7th Cir. 1993) (same); *Chrupcala v. Heckler*, 829 F.2d

7    1269, 1274 (3d Cir. 1987) (same); *Pickett v. Bowen*, 833 F.2d 288, 291-92 (11th Cir. 1987).  The

8    Court finds the reasoning of these cases to be persuasive and therefore concludes that the medical

9    improvement standard applies to the question of whether Plaintiff's disability ended in July 2005 in

10   this case.[2]

11           In *Shepard v. Apfel*, the court described the framework for applying the medical

12   improvement test as follows:

13           To apply the medical improvement test, the ALJ must first compare the medical severity of
             the current impairment(s) to the severity of the impairment(s) which was present at the time
14           of the most recent favorable medical decision finding the claimant disabled. *See id.* at §
             404.1594(b)(7). Then, in order to determine that medical improvement is related to ability to
15           work, the ALJ must reassess a claimant's residual functional capacity (RFC) based on the
             current severity of the impairment(s) which was present at claimant's last favorable medical
16           decision. *See id.* at § 404.1594(c)(2). The ALJ must then compare the new RFC with the
             RFC before the putative medical improvements. The ALJ may find medical improvement
17           related to an ability to do work only if an increase in the current RFC is based on objective
             medical evidence.

18
19   184 F.3d at 1201.  The ALJ in this case did not conduct such an analysis and his conclusion that

20   Plaintiff had improved is not based on substantial evidence.

21           In support of his conclusion that Plaintiff was no longer disabled as of July 2005, the ALJ

22   pointed to Plaintiff's testimony at the hearing in which she "admitted . . .that the surgery was

23   successful in halting the lumbar disc degeneration and reducing her back symptoms."  AR at 42.  He

24   also pointed to the two post-operative reports by Dr. Tay, citing Plaintiff's "significant

25   improvement," lack of postoperative complications, minimal lumbar scoliosis and the fact that

26   _____

27           [2]The Court notes that in its opposition and cross-motion for summary judgment the
     Commissioner did not challenge Plaintiff's position that the medical improvement standard applies
28   to the determination of whether Plaintiff's disability ended in July 2005.

11

United States District Court

For the Northern District of California

1   Plaintiff was "walking significantly longer than prior to her surgery." AR at 42. The ALJ further

2   assumed a six month recovery period to determine the exact date on which Plaintiff's closed period

3   of disability ended. This evidence is insufficient to establish medical improvement.

4          First, the ALJ mischaracterizes Plaintiff's testimony. While Plaintiff stated that the surgery

5   was successful, she also testified that she remained unable to do many of things she used to do and

6   that due to continuing back spasms, she could not sit for more than 20 minutes at a time or stand for

7   more than thirty minutes at a time. Plaintiff's testimony does not support the ALJ's conclusion that

8   as of July 1, 2005 she could perform light work.

9          Second, Dr. Tay's post-operative reports, while reflecting that Plaintiff's incision was

10   healing well and that Plaintiff was happy with results, do not purport to be a comprehensive

11   evaluation of Plaintiff's condition or the *degree* to which the surgery has resulted in a decrease in

12   Plaintiff's limitations. Further, while Dr. Tay's reports do not address whether Plaintiff's pre-

13   surgery limitations – including her inability to sit for more than twenty minutes at a time –

14   continued after the surgery, he did acknowledge that Plaintiff continued to experience "some mild

15   back spasms," supporting Plaintiff's testimony that she still could not sit for more than twenty

16   minutes at a time.[3] In short, Dr. Tay's post-operative reports do not offer substantial evidence in

17   support of the ALJ's finding that Plaintiff was no longer disabled as of July 1, 2005.

18          Finally, the ALJ's assumption that Plaintiff's recovery period would be six months is

19   supported by no medical evidence whatsoever.

20          The Court concludes that the ALJ erred in finding that Plaintiff's disability ended June 30,

21   2005. In particular, he did not cite to substantial evidence of medical improvement in support of his

22   conclusion that Plaintiff could perform light work. Accordingly, the Court reverses the decision of

23   the Commissioner as to this determination.

24

25   _____

26          [3]The Court also notes that Plaintiff's treating physician, Dr. Barber, found in a 2006 exam that
     Plaintiff was unable to sit or stand for more than half an hour due to continuing problems with muscle
27   spasms in her lower back and that Plaintiff was taking Vicodin daily for pain. AR at 311-313. Dr.
     Barber also noted that Plaintiff's back condition was worse in 2006. *Id.* These records were before the
28   Commissioner on reconsideration.

1     **C.**     **Consideration of Combined Impairments**

2         Plaintiff argues that the ALJ erred in failing to consider the combined effect of all of her

3 impairments, including her obesity, in determining her RFC, as required under 20 C.F.R. §

4 404.1523; *see also Celaya v. Halter*, 332 F.3d 1177, 1182-83 (9th Cir. 2003) (holding that ALJ erred

5 in failing to consider how obesity might exacerbate other conditions, even though obesity was not,

6 by itself, a severe impairment).   The Court agrees.   As discussed above, the ALJ did not address in

7 any meaningful way how Plaintiff's various impairments affected her ability to work after June 30,

8 2005, either alone or in combination with one another.   This error provides an additional ground for

9 reversing the determination of the Commissioner that Plaintiff was not disabled.

10     **D.**     **Credibility Determination**

11         Plaintiff challenges the ALJ's determination that Plaintiff's testimony that she was disabled

12 after July 1, 2005 was not credible, arguing that the ALJ failed to offer clear and convincing reasons

13 in support of that testimony.   The Court agrees.

14         A claimant's credibility is the degree to which the claimant's statements can be believed and

15 accepted as true.  SSR 96-7p at 4.  The ALJ must make credibility findings to determine the truth of

16 a claimant's description of her symptoms and pain.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir.

17 1996) (holding ALJ responsible for determining credibility and resolving conflicts in medical

18 testimony).  When making such findings, the ALJ "must consider the entire case record and give

19 specific reasons for the weight given to the [claimant's] statements.  The reasons for the findings

20 must be grounded in the evidence and articulated in the determination or decision."  *Id.*  Testimony

21 cannot be discredited solely because it is not supported by objective medical evidence.  *See* SSR 96-

22 7p; *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997).  Further, when there is no affirmative evidence

23 of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's

24 testimony.  *Burch v. Barnhart*, 400 F.3d 676 (9th Cir. 2005) (citation omitted).

25         The Ninth Circuit has articulated several factors that can be considered in determining

26 whether a claimant's pain testimony is credible.  These include the claimant's "reputation for

27 truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his

28

**United States District Court**
For the Northern District of California

13

**United States District Court**
For the Northern District of California

1    daily activities, his work record, and testimony from physicians and third parties concerning the

2    nature, severity, and effect of the symptoms of which he complains." *Light*, 119 F.3d at 792-93.  If a

3    claimant has proffered medical evidence that indicates the presence of an impairment that could

4    cause some pain, an ALJ may not base his disbelief of a claimant's testimony on the sole fact that it

5    is unsupported by medical findings.  *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  The Ninth

6    Circuit's rationale for this rule lies in the fact that "pain is a subjective phenomenon."  *Id.*

7              Here, the ALJ offered the following reasoning in support of his credibility determination:

8              The medical evidence does not support [Plaintiff's allegation of disability since July 2005].
              The claimant had successful lumbar surgery in January 2005 and her treating physician
9              reported substantial improvement and minimal objective findings postoperatively.  Assuming
              a recovery period of approximately 6 months the claimant could perform light work by July
10             1, 2005.  This conclusion is consistent with the medical evidence, particularly the findings of
              the treating surgeon.  The claimant alleged minimal ongoing medical treatment which
11             undermined her allegation of disability since July 2005.  The lack of ongoing medical
              treatment and the minimal objective findings refute any allegation of disability since July
12             2005.

13   AR at 42.  Yet the medical evidence, as noted above, was not sufficient to demonstrate that due to

14   medical improvement Plaintiff was no longer disabled.  Further, the ALJ's reference to "minimal

15   ongoing treatment" is not supported by the record.  In particular, the decision was issued less than

16   two months after the date on which the ALJ determined the disability ended, giving Plaintiff little

17   opportunity to provide evidence of treatment after July 1, 2005.  In fact, records that were later

18   submitted to the Commissioner indicate that Plaintiff saw her doctors on a frequent basis in the two

19   years following her back surgery.  The Court concludes that the ALJ's credibility determination was

20   not supported by clear and convincing reasons.

21             **E.    Remedy**

22             Having determined that the ALJ has erred, the Court must address whether to remand for

23   further administrative proceedings or simply remand for award of benefits.  "[W]here the ALJ

24   improperly rejects the claimant's testimony regarding his limitations, and the claimant would be

25   disabled if his testimony were credited," the Court will not remand solely to allow the ALJ to make

26   specific findings.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).  For example, in *Moisa v.*

27   *Barnhart*, the court held that award of benefits was proper where the ALJ had improperly rejected

28   Plaintiff's pain testimony. 367 F.3d 882,887 (9th Cir. 2004).  Similarly here, the ALJ's rejection of

Plaintiff's testimony that she could not sit for more than 20 minutes at a time was clear error.

Further, the VE testified that such a limitation would preclude Plaintiff from performing her past

work.  Because Plaintiff's testimony, if credited, mandates a finding of disability, remand for further

proceedings is inappropriate.  Rather, the Court remands to the Commissioner for award of benefits.

**IV.      CONCLUSION**

For the reasons stated above, Plaintiff's Motion is GRANTED; the Commissioner's Motion

is DENIED.  This case is remanded to the Commissioner for award of benefits.

IT IS SO ORDERED.

Dated: September 4, 2008

JOSEPH C. SPERO
United States Magistrate Judge

**United States District Court**
For the Northern District of California

15